UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN DEAN PARKS,

Plaintiff,

v.

BULMARO CHAVEZ,

Defendant.

No. C-12-6018 EMC (pr)

**ORDER OF DISMISSAL WITH LEAVE TO AMEND**

## I. INTRODUCTION

Steven Dean Parks, an inmate at San Quentin State Prison, filed a *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the Court for review under 28 U.S.C. § 1915A.

## II. BACKGROUND

In this action, Parks sues defendant Bulmaro Chavez, an engineer on the staff at San Quentin State Prison, for putting the wrong date on a memorandum about him. The memorandum was a CDC 128-A counseling chrono that documented minor inmate misconduct.[1]

---

[1] The CDC-128-A is the second least serious response to inmate misconduct. California regulations provide for several ways for prison staff to handle inmate misconduct. "Staff may respond to minor misconduct by verbal counseling. When verbal counseling achieves corrective action, a written report of the misconduct or counseling is unnecessary." Cal. Code Regs. tit. 15, § 3312(a)(1). "When similar minor misconduct recurs after verbal counseling or if documentation of minor misconduct is needed, a description of the misconduct and counseling provided shall be documented on a CDC Form 128-A, Custodial Counseling Chrono." *Id.* at § 3312(a)(2). The inmate receives a copy and the original is placed in his file. *Id.* The regulation does not contemplate any further action being taken on a CDC 128-A. When misconduct "is believed to be a violation of law or is not minor in nature," a CDC-115 rule violation report may be issued. *Id.* at § 3312(a)(3). CDC-115 rule violation reports are classified as administrative or serious, trigger certain procedural protections, and can result in various forms of discipline for the offending inmate. *See* Cal. Code

The complaint alleges that defendant Chavez wrote a CDC 128-A about Parks on or about December 1, 2011. Docket # 1, p. 3. In the original CDC-128, Chavez wrote that he had counseled Parks on November 28, 2011 after Parks had exhibited a bad attitude while on duty for about three weeks; that he had counseled Parks on November 30, 2011 after observing him giving light bulbs to another inmate worker without permission from staff assigned in the electric shop; and that Parks was argumentative when counseled. *See* Docket # 1, p. 12 (bottom half).

Parks alleges that he filed an inmate appeal about the CDC 128-A, which was granted. Docket # 1, p. 3. The appeal decision, he alleges, required that the CDC 128-A be removed from his central file. The appeal decision attached to the complaint contained this order from the warden's office to prison staff: "Remove current CDCR 128A Custodial Counseling chrono, dated July 16, 2012 authored by B. Chavez from Appellant's Central File. Generate a new CDCR 128A, dated December 1, 2011-AMENDED, describing ONLY the information relevant to progressive discipline for distribution of supplies without proper approval." *See* Docket # 1, p. 11.

The complaint alleges that Chavez then wrote a false CDC 128-A. *See* Docket # 1, pp. 3, 5. The allegedly false document is a CDC 128A, bearing the date "December 1, 2011 (AMENDED)." *See* Docket # 1, p. 12 (top half). This amended CDCR 128-A was signed by Chavez and states that he had counseled Parks on November 30, 2011 after observing him giving light bulbs to another inmate worker without permission from staff assigned in the electric shop, and that Parks had been verbally counseled in the past about giving out materials without permission from the staff. *See* Docket # 1, p. 12 (top half). Chavez contends that this later-generated CDC 128-A is false because it was written in July 2012, although he never worked for Chavez after December 1, 2011. *Id.* at 5.

It is somewhat unclear, but Parks also appears to contend that the document was "false" in that he had not committed the offense documented in the CDC 128-A. He attaches a document that purports to show that other prison employees asked him to provide the lights to them. Docket # 1, pp. 7. In the document, a prison employee wrote that Parks had given him the lights at the

---

Regs. tit. 15, §§ 3313-3316.

employee's request, and that Chavez later told the employee to go through him (i.e., Chavez) for lights, rather than dealing directly with an inmate. *See id.*

Parks claims that defendant Chavez's preparation of the amended CDC-128-A with a date of December 1, 2011 violated his Fourteenth Amendment rights to due process and equal protection and his Eighth Amendment rights. He also appears to claim that the inmate appeal decision required that the CDC 128-A dated December 1, 2011 to be removed from his central file.

### III. DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

False charges alone are not actionable under § 1983 because falsely accusing an inmate of misconduct does not violate a right secured by the Constitution or laws of the United States. For a false accusation to be potentially actionable, the false charge must implicate some constitutional right, such as the Fourteenth Amendment's right to due process or the First Amendment-based right to be free from retaliation. An allegation of a false charge that results in discipline that is not severe enough to amount to a deprivation of a protected liberty interest under *Sandin v. Conner*, 515 U.S. 472 (1995)[2] – that is, by imposing an atypical and significant hardship or by inevitably affecting the

---

[2] The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Changes in conditions of confinement for a prison inmate may amount to a deprivation of a constitutionally protected liberty interest, provided that the liberty interest in question is one of "real

duration of confinement – does not state a claim under § 1983. *See Smith v. Mensinger*, 293 F.3d 641, 653-54(3d Cir. 2002) (no § 1983 claim was stated for allegedly false charges because the disciplinary confinement imposed was too short to amount to an atypical and significant hardship under *Sandin*); *accord Strong v. Ford*, 108 F.3d 1386, 1997 WL 120757 (9th Cir. 1997) (unpublished table case) (affirming summary judgment in favor of defendants where guard's allegedly false statement resulted in a loss of 30 days time credit that was ultimately restored; "[t]he alleged making of a false charge, however, reprehensible or violative of state law or regulations, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of 'atypical hardship on the inmate in relation to the ordinary incidents of prison life'"). Even if the false charge does result in discipline that amounts to the deprivation of a protected liberty interest under *Sandin*, a § 1983 claim is not stated if the inmate is afforded the procedural protections required by federal law at the disciplinary hearing. *See Smith*, 293 F.3d at 654; *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984).

The complaint fails to state a claim for a due process violation based on the allegedly false CDC 128-A. The counseling chrono documented that Parks had committed minor misconduct and was told not to repeat it. The counseling chrono did not indicate that any discipline was contemplated for the reported misconduct, nor has Parks alleged that there was any other discipline. Being told, "don't do that again" does not impose an atypical and significant hardship. The CDC 128-A also did not inevitably affect on the duration of his confinement. The possible effect of a disciplinary decision on later parole consideration is too speculative to say that the disciplinary decision has an inevitable effect on the duration of the plaintiff's sentence. *See Sandin*, 515 U.S. at

---

substance." *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). An interest of "real substance" will generally be limited to freedom from (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487. In determining whether a restraint is an "atypical and significant hardship," courts consider whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody, the duration of the condition, the degree of restraint imposed, and whether the discipline will invariably affect the duration of the prisoner's sentence. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003).

4

1 487 (even though misconduct is a relevant consideration in the parole context, "[t]he decision to
2 release a prisoner rests on a myriad of considerations. . . . The chance that a finding of misconduct
3 will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due
4 Process Clause"). The issuance of the counseling chrono with no discipline attached simply did not
5 implicate a federally protected liberty interest. Even if Parks had not committed the misconduct
6 documented in the CDC 128-A and even if the amended CDC 128-A was falsely dated December 1,
7 2011, no due process claim is stated because Parks had no right to due process in connection with
8 the issuance of the counseling chrono.

9 The complaint also does not state a claim for relief for violations of the other constitutional
10 provisions mentioned in the complaint. Leave to amend will be granted so that he may attempt to
11 allege such claims. "To state a § 1983 claim for violation of the Equal Protection Clause '"a plaintiff
12 must show that the defendants acted with an intent or purpose to discriminate against the plaintiff
13 based upon membership in a protected class."'" *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166
14 (9th Cir. 2005). To state a § 1983 claim for a violation of the Eighth Amendment's cruel and
15 unusual punishments clause based on prison conditions, the plaintiff must allege (1) a deprivation
16 that is, objectively, sufficiently serious, and (2) that a prison official is, subjectively, deliberately
17 indifferent to the risk that presents to the inmate's safety or health. *See Farmer v. Brennan*, 511 U.S.
18 825, 834 (1994).

19 Finally, Parks contends that the administrative appeal decision required that the CDC 128-A
20 be removed from his central file. The failure to implement an administrative appeal decision is not
21 actionable under § 1983. Even if it was actionable, the document does not support Parks' position.
22 Although the administrative appeal decision did order the removal of one CDC 128-A, it also
23 directed that an amended CDC 128-A be created to replace it. *See* Docket #1 , p. 11 ("Remove
24 current CDCR 128-A . . . Generate a new CDCR 128A"). Prison officials were not obliged to only
25 comply with only the first half of the order.

## IV. CONCLUSION

27 The complaint fails to state a claim upon which relief may be granted. Leave to amend will
28 be granted so that plaintiff may attempt to state a claim. The amended complaint must be filed no

5

later than **March 8, 2013**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint by the deadline will result in the dismissal of the action.

IT IS SO ORDERED.

Dated: February 12, 2013

_____
EDWARD M. CHEN
United States District Judge

6